UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 2 6 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-631-GWU

JOSEPH FRAZIER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Frazier

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical workups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Frazier

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joseph Frazier, was found by an Administrative Law Judge (ALJ) to have had a "severe" impairment for a closed period between August 10, 2001 through September 2, 2003 consisting of "non-union of a left leg fracture, status post open reduction and fixation." (Tr. 20). During that time, the ALJ determined, Mr. Frazier met the Commissioner's Listing of Impairment (LOI) 1.06A and B. (Id.). Beginning September 3, 2003, the ALJ determined that Mr. Frazier had a "severe" impairment of "a history of a left leg fracture, healed, status post open reduction internal fixation." (Tr. 23). For this period, based in part on the testimony of a vocational expert (VE), the ALJ found that Mr. Frazier retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 25). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to medium level exertion, and also had the following non-exertional impairments. (Tr. 282-3). He: (1) could continuously sit for two to four hours, and for 8 hours "with rests," could stand for one to two hours, and for 8 hours "with rests," and could walk for one to two hours and 8 hours "with rests;" (2) could frequently

7

bend; and (3) could occasionally squat, crawl, and climb. (Tr. 283). The VE responded that there were jobs that such a person could perform, including Mr. Frazier's past relevant work as a car detailer. (Tr. 283-4).

On appeal, the plaintiff challenges the finding that his condition improved to the point that he no longer met LOI §1.06 on September 3, 2003. Alternatively, he argues that, even if his condition had improved, the ALJ's hypothetical question was inaccurate. The plaintiff's Date Last Insured (DLI) was December 31, 2001 (Tr. 65), meaning that he had to establish disability existing before that date.

The medical evidence shows that Mr. Frazier sustained a broken leg on August 11, 2001 (Tr. 152), and an orthopedic surgeon, Dr. Patrice Beliveau, performed left tibia intramedullary rodding with proximal and distal interlocking screws the same day (Tr. 154-5). The physician opined that the condition would keep Mr. Frazier off work for 14 to 16 months for a complete union of the fracture to occur. (Tr.236). Mr. Frazier was allowed partial weight-bearing as early as September 25, 2001 but, at the time of his last visit to Dr. Beliveau on May 6, 2002, the physician noted continued incomplete healing, and raised the possibility of a removal of the existing rod followed by a bone graft with a new rod placement (Tr. 230). At that time, Dr. Beliveau opined that his patient would be disabled for another one to one and one-half years "for any type of work-related activity for which he has background and training." (Tr. 230).

8

The plaintiff testified that he was unable to continue treatment with Dr. Beliveau due to lack of medical coverage. (Tr. 268). He stated that he had stopped using the crutches Dr. Beliveau had given him approximately August, 2003 (Tr. 274) and, while he had a cane, he was not using it the day of the hearing (Tr. 275). He stated that both of his legs hurt when he walked, and he thought the rod was moving in his leg. (Tr. 270-1). He was able to drive occasionally, despite not having a driver's license due to a DUI, and initially testified that he took care of his disabled mother and had to do "everything" for her. (Tr. 258-60). Later in the hearing, he asserted that he spent most of his day propped up in bed watching Judge Judy. (Tr. 274). However, he could stand for one hour without problems, and sometimes two hours, depending on the weather. (Tr. 270).

The only medical examination after May, 2002 was a consultative physical examination by Dr. Mark Carter on September 3, 2003. (Tr. 240). At that time, Mr. Frazier complained of pain with weight-bearing, and that he could only stand for one or two hours, but he was ambulating without a cane or other assistive device. (Tr. 240-1). Dr. Carter's examination showed that Mr. Frazier walked with a mild left limp, could walk on his heels and toes, and could perform two-thirds of a full knee squat. (Tr. 241). He had well-heeled surgical scars on his left knee and left ankle, but there was no cyanosis, clubbing, or edema, pulses were normal, and there was no joint swelling, crepitus, erythema, or warmth. (Id.). Strength was full, and reflexes were normal. (Tr. 242). X-rays of the left tibia and fibula showed fractures

9

Frazier

of both, but there was "good callous formation with union." (Id.). A nail and two screws were present, with the most distal screw appearing to be one centimeter out of the bone, but Dr. Carter could not tell if the screw had backed out or was in its original placement. (Id.). He added, however, that the nail was in place, and the fracture sites appeared to be healing well. (Id.). He did not see any significant arthritic disease at either the knee or the ankle. Dr. Carter completed a residual functional capacity assessment giving the factors listed by the ALJ in the hypothetical question, supra. (Tr. 246).

Considering the plaintiff's first argument regarding the listings, LOI §1.06 is captioned "fracture of the femur, tibia, pelvis, or one or more of the tarsal bones," and requires both "A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." Section 1.00B(2)(b) defines inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities," and goes on to state that "independent ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." To ambulate effectively an individual has to be capable of "sustaining a reasonable walking pace over a sufficient distance to

10

Frazier

carry out activities of daily living," such as "traveling without companion assistance to and from a place of employment or school."

Since the plaintiff was awarded a closed period of disability up to the date of Dr. Carter's September 3, 2003 examination, the only question is his condition after that point. Although the plaintiff maintains that Dr. Carter's examination and testing did not show a "solid union," Dr. Carter, as previously noted, described "good callous formation with union" on new x-rays. A reasonable fact finder could have determined that this language was equivalent to the "solid union" required by LOI §1.06. Furthermore, a reasonable fact finder could have concluded that the plaintiff's ability to attend both a consultative examination and the administrative hearing without a hand-held assistive device, along with his testimony regarding his ability to stand and to carry out activities of daily living including taking care of a "disabled" mother, cleaning the kitchen, and mopping (Tr. 273), combined with Dr. Carter's findings on physical examination, showed an ability to effectively ambulate without a hand-held assistive device. The plaintiff asserts that the listings provide that an ability to walk around one's home independently does not, in and of itself, constitute effective ambulation, but the evidence in the present case shows more activity than this alone. In any event, if the plaintiff does not meet the "A" criteria of 1.06, it does not matter whether he meets the "B" criteria.

The plaintiff's other argument is that the ALJ should have provided the VE with a sit/stand option. However, the ALJ provided the restrictions to the VE as they

11

Frazier

were given in the form filled out by Dr. Carter. The form has blanks for sit, stand, and walk, with blanks under the headings of "continuously" and "with rests." (Tr. 246). Dr. Carter wrote that the plaintiff could sit "continuously" for "2-4" hours and for 8 hours "with rests," that he could stand continuously for "1-2" hours and for 8 hours "with rests," and that he could walk continuously for "1-2" hours and for 8 hours "with rests." (Id.). This language is consistent with alternate sitting, standing, and walking. In fact, since it specifies that the plaintiff could not perform any of the activities for more than 2-4 hours, it would have to be presented that he was alternating positions through the workday.

The decision will be affirmed.

This the __26__ day of October, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

12